SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Sundiata Acoli (f/k/a Clark Edward Squire) v. New Jersey State Parole Board** (A-52-14) (075308)

**Argued October 13, 2015 -- Decided February 23, 2016**

**LaVECCHIA, J., writing for a majority of the Court.**

This appeal requires the Court to address the statutory process governing parole, and to determine whether it was error for an appellate panel to order parole where the full Parole Board did not conduct an in-person assessment and hearing of a convicted murderer.

In 1974, Sundiata Acoli was convicted of murder; atrocious assault and battery; assault and battery; assault with an offensive weapon; assault with intent to kill; illegal possession of a weapon; and armed robbery. The trial court imposed an aggregate sentence of life plus twenty-four to thirty years. In 2010, at the age of seventy-three, and after serving almost thirty-seven years of his sentence, Acoli became eligible for parole for the third time. A parole hearing officer performed an initial review of Acoli's file, and the case was referred to a Parole Board panel for a hearing. After interviewing Acoli at length, the two-member Board panel determined that "a substantial likelihood exists that [Acoli] would commit a new crime if released on parole at this time." The two-member panel transferred the case to a three-member Board panel to establish a future eligibility term -- that is, when Acoli could reapply for parole. The three-member panel set a future eligibility term of 120 months.

Following the administrative process for review, Acoli filed an appeal with the full Parole Board. The full Board conducted a review based on the record as developed before the panels, commonly known as a paper hearing. In that review, the Parole Board considered the record developed by the hearing officer and the two- and three-member panels, but the Board did not hear testimony itself or otherwise create its own record. The full Board approved the denial of parole to Acoli and the establishment of a 120-month future eligibility term. The Parole Board identified its decision as a final agency decision for the purposes of appellate review.

Acoli appealed, and the Appellate Division reversed, concluding that the Board's basis for denying parole constituted arbitrary and capricious action. The panel ordered that the Parole Board "expeditiously set conditions for [Acoli's] parole." The Board filed a motion for reconsideration, arguing that the panel should have remanded the case to the Parole Board for a full hearing, rather than ordering parole. According to the Board, that result was compelled by N.J.S.A. 30:4-123.55(f), which required that the full fifteen-member Parole Board conduct a hearing before paroling an inmate who has been convicted of murder. The Appellate Division denied the motion. The panel reasoned that N.J.S.A. 30:4-123.55(f) is triggered only when a two-member Board panel recommends parole.

The Court granted the Parole Board's petition for certification, 221 N.J. 220 (2015), and motion for a stay.

**HELD:** The administrative scheme for parole envisioned that a convicted murderer would undergo a full hearing before the Parole Board prior to securing release from incarceration. In Acoli's circumstances, the appropriate remedy is a remand to the full Parole Board for completion of the administrative parole process. That process in its totality requires a full hearing before the Parole Board on his suitability for parole release and shall permit the victims of his criminal acts to be heard, if they wish, by the Board prior to a decision on his parole.

1. The State Parole Board is the agency charged with the responsibility of deciding whether an inmate satisfies the criteria for parole release under the Parole Act of 1979. Judicial review of the Parole Board's decisions is guided by the arbitrary and capricious standard that constrains other administrative action. (pp. 9-11)

2. The Parole Act and its implementing regulations set forth the process that normally governs parole determinations. For most crimes, correctional personnel prepare a report that is filed with a Parole Board panel. Then a designated hearing officer reviews that report, along with other supporting documentation. If the hearing officer determines that there is a basis for denial of parole, or that a hearing is otherwise necessary, the case must be referred to a panel of the Board for an informal hearing. N.J.S.A. 30:4-123.55(c). After the hearing, the Board

panel can either "certify the parole release of the inmate" or "deny parole and file . . . a statement setting forth the decision," N.J.S.A. 30:4-123.55(d). If the Board panel denies parole, the inmate may appeal to the full Parole Board, which may affirm, modify, or reverse the Board panel's decision, or remand for further findings. (pp. 11-13)

3. The Parole Act creates an alternative parole track for inmates convicted of murder. For inmates serving a term for murder and other serious offenses, a hearing officer cannot recommend parole; the individual hearing officer must refer the case to a Board panel for a hearing. In the case of an inmate convicted of murder, even after the hearing, the panel is without authority to certify parole; it can only recommend parole. When a Board panel recommends parole, referral to the full Board is automatic. Parole cannot be certified "until a majority of the full parole board, after conducting a hearing, concurs in that recommendation." N.J.S.A. 30:4-123.55(f). That alternate track grew out of 1989 and 1993 amendments to the Parole Act, addressing the parole process for murder inmates and victim rights, respectively. (pp. 13-16)

4. Acoli maintains that a full hearing is required only when the two-member panel recommends parole to a convicted murderer. That literal reading misses the overall import of the consequences of the legislative outcome that the 1989 amendatory language sought to achieve, namely to ensure that no convicted murderer would be released without having had a full Board hearing to consider the murder inmate's grant of parole. At the very least, the language is ambiguous in expressing the sense of this amendment and its operation in all settings involving the parole release of a convicted murderer, making resort to legislative history to resolve the question raised by the ambiguity appropriate. Here the legislative history does not support the constrained reading advanced by Acoli. Instead, the Board's proposed interpretation finds support from the general understanding of the amendment's import contained in contemporaneous legislative history. See, e.g., Office of the Governor, News Release (June 29, 1989) (explaining on Governor's signing of bill into law that new legislation "requires the full Parole Board to review parole recommendations for inmates convicted of first-degree murder"); Senate Judiciary Committee, Statement to Assembly No. 2772 (signaling same expectation). (pp. 16-20)

5. Moreover, generally, when construing language of a statutory scheme, deference is given to the interpretation of statutory language by the agency charged with the expertise and responsibility to administer the scheme. Here that agency -- the Board -- expected that, if ever its affirmance of a two-member panel's decision to deny release to a convicted murderer were reversed on judicial review, the full Board would have the opportunity to conduct its final and full Parole Board hearing that is implicitly required by N.J.S.A. 30:4-123.55(f), including the opportunity to interview the inmate in that setting. The Board's interpretation of what the Legislature expected of it in the execution of its delegated predictive task is reasonable and thus entitled to deference by the courts. (pp. 20-22)

6. The Appellate Division here declined to remand to the Parole Board for a full hearing. The panel, essentially, saw no point to that step, having itself evaluated Acoli's bases for asserting that he is ready for release and determining that there has been no convincing reason presented to date to require his further incarceration. That remedy basically substituted the appellate panel's judgment for that of the agency charged with the expertise to make such highly predictive, individualistic determinations -- the full Parole Board. (p. 23)

7. Finally, in 1993, the Legislature pointedly added reference to the rights of victims. That language supports the conclusion that, prior to a murder inmate's parole release, the Legislature expected that the full Board would conduct a hearing with the inmate present for examination, and that the victim(s) would receive notice of that hearing and be given the opportunity to address the Board and to witness the full Board's interaction with the incarcerated murderer prior to his or her approval for release. Under the truncated review that occurred here, and on which the appellate panel based its order requiring the Board to set conditions for Acoli's release, that language would be substantially neutered, if not rendered meaningless. (pp. 23-24).

The remedy imposed by the Appellate Division is **REVERSED**, and the matter is remanded for further proceedings.

**JUSTICE ALBIN, DISSENTING,** expresses the view that the plain and unambiguous language of N.J.S.A. 30:4-123.55(f) requires a full evidentiary hearing by the Parole Board only when a Board panel recommends that a murder inmate be paroled; nothing in the language of that subsection or the legislative history suggests that the Legislature intended to address anything other than the circumstance of a Board panel's decision to recommend release of a convicted murderer. The statutes applicable to cases in which the Board panel denies parole, N.J.S.A. 30:4-123.55(c) and -123.58, do not mandate that the full Parole Board conduct an evidentiary

2

hearing.

**JUSTICES PATTERSON and SOLOMON and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion. JUSTICE ALBIN filed a separate, dissenting opinion. CHIEF JUSTICE RABNER and JUSTICE FERNANDEZ-VINA did not participate.**

SUNDIATA ACOLI (f/k/a CLARK
EDWARD SQUIRE),

    Petitioner-Respondent,

        v.

NEW JERSEY STATE PAROLE
BOARD,

    Respondent-Appellant.


        Argued October 13, 2015 – Decided February 23, 2016

        On certification to the Superior Court,
        Appellate Division.

        Lisa A. Puglisi, Assistant Attorney General,
        argued the cause for appellant (John J.
        Hoffman, Acting Attorney General of New
        Jersey, attorney; Melissa H. Raksa,
        Assistant Attorney General, of counsel).

        Bruce I. Afran argued the cause for
        respondent.

        Alexander R. Shalom argued the cause for
        amicus curiae American Civil Liberties Union
        of New Jersey Foundation (Edward L. Barocas,
        Legal Director, attorney).


    JUSTICE LaVECCHIA delivered the opinion of the Court.

    After a two-member panel of the Parole Board denied parole

to petitioner Sundiata Acoli, a convicted murderer who twice

before had been denied parole, Acoli filed an internal

administrative appeal. That administrative appeal entitled him

1

to a review by the full Parole Board of the record that had been developed before the Board panel, as well as any additional material submitted by Acoli. Because he had not been recommended for parole, the full Board did not conduct an in-person assessment of Acoli consistent with its regulations governing the parole process. The Parole Board affirmed the denial of parole and the extended future parole eligibility date established for Acoli.

Acoli appealed to the Appellate Division, and, in an unpublished opinion, the appellate panel reversed the Parole Board. The Appellate Division determined that, based on the administrative record developed, the Parole Board's affirmance of the denial of parole was arbitrary and capricious. The appellate panel ordered the Parole Board to "expeditiously set conditions for parole."

We granted the Parole Board's petition for certification, which argues only that it was error, under the statutory process governing parole, for the Appellate Division to have proceeded directly to ordering Acoli's parole. Construction of the statutes governing the parole process leads us to conclude that the Appellate Division acted prematurely in ordering Acoli's parole release.

As we perceive the legislative intent expressed through the parole statute, the administrative scheme for parole envisioned

2

that a convicted murderer would undergo a full hearing before the Parole Board prior to securing release from incarceration. Submitting the decision of a two-member panel's denial of parole to a truncated Board review of a murder inmate's alleged errors does not substitute for the full Board in-person review and hearing of a convicted murderer prior to his or her parole release. Accordingly, we hold that the appropriate remedy in Acoli's circumstances is a remand to the full Parole Board for completion of the administrative parole process. That process in its totality requires a full hearing before the Parole Board on his suitability for parole release and shall permit the victims of Acoli's criminal acts to be heard, if they wish, by the Board prior to a decision on his parole. We reverse and remand for proceedings consistent with this opinion.

## I.

We begin with a summary of the relevant facts and the procedural path that this appeal has taken. Foremost, the procedural history sets the stage for the statutory construction issue at the heart of this appeal.

Stemming from his involvement in the 1973 roadside murder of State Trooper Werner Foerster and assault of Trooper James Harper along the New Jersey Turnpike, Acoli was convicted in 1974 of murder; atrocious assault and battery; assault and battery; assault with an offensive weapon; assault with intent

3

to kill; illegal possession of a weapon; and armed robbery. Under the sentencing provisions in place at the time, the trial court sentenced Acoli to a life term for the murder conviction and consecutive sentences of ten to twelve years of imprisonment for his conviction for assault with intent to kill; two to three years of imprisonment for illegal possession of a weapon; and twelve to fifteen years of imprisonment for armed robbery. Taken together, he received an aggregate sentence of life plus twenty-four to thirty years.

In 2010, at the age of seventy-three, and after serving almost thirty-seven years of his sentence, Acoli became eligible for parole for the third time.[1] A parole hearing officer performed an initial review of Acoli's file, and the case was referred to a Parole Board panel for a hearing. After interviewing Acoli at length, the two-member Board panel determined that "a substantial likelihood exists that [Acoli] would commit a new crime if released on parole at this time." Because of that determination, the two-member panel transferred the case to a three-member Board panel to establish a future eligibility term -- that is, when Acoli could reapply for parole -- under administrative guidelines. The three-member panel set a future eligibility term of 120 months.

_____

[1] Acoli previously had been denied parole in 1993 and 2004.

4

Following the administrative process for review, Acoli filed an appeal with the full Parole Board. The full Board conducted a review based on the record as developed before the panels, commonly known as a paper hearing. In that review, the Parole Board considered the record developed by the hearing officer and the two- and three-member panels, but the Board did not hear testimony itself or otherwise create its own record. With that as the record before it, the full Board (minus the Board members who had participated in earlier panel decisions) approved the denial of parole to Acoli and the establishment of a 120-month future eligibility term. The Board's findings were set forth in a nine-page written decision that essentially adopted the Board panels' determinations.

The Parole Board identified its decision as a final agency decision for the purposes of appellate review. See R. 2:2-3(a)(2). Acoli appealed, and the Appellate Division reversed. The Appellate Division concluded that the Board's basis for denying Acoli parole constituted arbitrary and capricious action, and the panel ordered that the Parole Board "expeditiously set conditions for [Acoli's] parole."

The Board filed a motion for reconsideration. It asked the panel to reassess its remedy and, further, requested a stay pending reconsideration. The Board argued that, rather than ordering parole, the Appellate Division should have remanded the

5

case to the Parole Board for a full hearing.  According to the Board, that result was compelled by N.J.S.A. 30:4-123.55(f), which required that the full fifteen-member Parole Board conduct a hearing before paroling an inmate who has been convicted of murder.

Concluding that the Board misconstrued N.J.S.A. 30:4-123.55(f), the Appellate Division denied the motion for reconsideration in a written order.  According to the appellate panel, N.J.S.A. 30:4-123.55(f) is triggered only when a two-member Board panel recommends parole.  Viewing that subsection to be designed as a curb on a rogue two-member panel that might improperly release a convicted murderer, the appellate panel dismissed the subsection as inapplicable to Acoli's circumstances.  To the appellate panel, nothing in N.J.S.A. 30:4-123.55(f) mandated a plenary hearing before the full Parole Board "if the inmate was not certified for parole by an assigned member or the board panel prior to the Board considering an appeal from a denial of parole."  Accordingly, the appellate panel saw no reason to disturb its prior decision and dismissed as moot the Board's stay application.

The Parole Board filed a motion for a stay before this Court, pending this Court's determination on its petition for certification.  We granted the stay and the Board's petition for certification.  Acoli v. N.J. State Parole Bd., 221 N.J. 220

6

(2015). We also granted amicus curiae status to the American Civil Liberties Union of New Jersey (ACLU-NJ).

## II.

### A.

The Board maintains that the Legislature directed that before an inmate serving a sentence for murder can be paroled, the full Board must certify parole, by a majority vote, after a hearing. That legislative aim, the Board says, was thwarted by the Appellate Division's narrow construction of N.J.S.A. 30:4-123.55(f), which would require a full Board hearing only when the two-member panel recommends parole. Accordingly, the Board asks this Court to remand to the Board for a full hearing.

The Board emphasizes the distinctions between the administrative paper appeal (the type of appeal that occurred here) and the full evidentiary hearing. To the Board, the two proceedings are not interchangeable. The full hearing provides each Board member with the chance to question the inmate and hear his or her responses, using those responses as aids in assessing whether the inmate is likely to commit a crime if released. However, the administrative appeal is simply a paper review of the record before the Board panel, its decision, and the inmate's objections to it.

Last, the Board argues that the Appellate Division deprived the victims of their right to appear before the fifteen-member

7

Board. Although the victims may have had a chance to appear before the two-member panel, the Board contends that the Legislature specifically granted victims the right to provide input before the full Board, guiding its parole consideration of an incarcerated convicted murderer.

## B.

Focusing on the plain language of N.J.S.A. 30:4-123.55(f), Acoli argues that the subsection applies only when a two-member Board panel recommends parole for an incarcerated convicted murderer. According to Acoli, the Appellate Division correctly determined that N.J.S.A. 30:4-123.55(f) did not apply in his circumstances. Acoli contends that the Legislature's purpose undergirding that provision is to prevent a two-member Board panel, acting alone, from paroling an inmate serving a sentence for murder. He urges this Court to find no ambiguity in the statute and maintains that to grant the Board's requested relief would attribute to N.J.S.A. 30:4-123.55(f) an intent that runs contrary to its plain language.

The ACLU-NJ makes a similar argument, maintaining that the plain language of N.J.S.A. 30:4-123.55(f) renders it inapplicable here. The ACLU-NJ divides the roads ordinarily taken for parole release into three general categories: (1) the Board panel could certify parole, triggering an inmate's release; (2) if the Board panel denies parole, the inmate can

8

appeal that denial to the full Board, which could then certify release; and (3) an appellate court could find the Board's denial so arbitrary that the court intervenes and grants parole. The ACLU-NJ explains that N.J.S.A. 30:4-123.55(f) cuts off the first path -- a Board panel certifying parole -- for inmates convicted of murder. However, the ACLU-NJ asserts that the subsection left untouched the second and third routes to parole.

Emphasizing the words of N.J.S.A. 30:4-123.55(f), the ACLU-NJ states that the subsection applies only when a Board panel recommends a murder inmate for parole. Because the Board panel here denied Acoli's parole request, the ACLU-NJ argues that the subsection is plainly inapplicable and urges affirmance of the Appellate Division judgment.

### III.

We begin with the structure of the Parole Board and the parole process. The State Parole Board is composed of a chair, fourteen associate members, and three alternate members. N.J.S.A. 30:4-123.47(a). Appointed by the Governor with the advice and consent of the Senate, those members are appointed to bring expertise in "law, sociology, criminal justice, juvenile justice or related branches of the social sciences." Ibid.

Like other administrative agencies that employ specialized knowledge to administer a regulatory scheme, the Parole Board is the "agency charged with the responsibility of deciding whether

9

an inmate satisfies the criteria for parole release under the Parole Act of 1979." In re Application of Hawley, 98 N.J. 108, 112 (1984). Drawing on the diverse backgrounds of its members, the Parole Board makes "highly predictive and individualized discretionary appraisals." Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 359 (1973).

Those appraisals must realistically be recognized to be inherently imprecise, as they are based on "'discretionary assessment[s] of a multiplicity of imponderables, entailing primarily what a man is and what he may become rather than simply what he has done.'" Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 10, 99 S. Ct. 2100, 2105, 60 L. Ed. 2d 668, 677 (1979) (quoting Sanford H. Kadish, The Advocate and the Expert -- Counsel in the Peno-Correctional Process, 45 Minn. L. Rev. 803, 813 (1961)); see also Trantino v. N.J. State Parole Bd., 166 N.J. 113, 201 (2001) (Baime, J.A.D., dissenting) ("Stripped to its essentials, a parole board's decision concerns a prediction as to an inmate's future behavior, a prognostication necessarily fraught with subjectivity."). But that imprecision does not allow parole determinations to escape judicial scrutiny. Judicial review of the Parole Board's decisions is guided by the arbitrary and capricious standard that constrains other administrative action. See Hawley, supra, 98 N.J. at 112-13.

10

It is settled law that the parole of an inmate may come about through appellate review of the parole process when that process has been completed and the Board has been shown to have acted arbitrarily in denying parole. In Trantino, supra, this Court confronted the Parole Board's argument that "the actual granting or withholding of parole is a function reposing exclusively in the Parole Board, and there is no such thing as judicial parole." 166 N.J. at 173 (internal quotation marks omitted). Although the Parole Board rarely acts so far outside of its discretion as to invite judicial intervention, we recognized in Trantino that the power to reverse the agency and order that parole be granted "may be encompassed within the province of judicial review." Ibid.

That said, the Parole Act and its implementing regulations set forth the process that normally governs parole determinations. See N.J.S.A. 30:4-123.45 to -123.69; N.J.A.C. 10A:71-3.1 to -4.3.

For most crimes, as an inmate's parole eligibility date approaches, correctional personnel prepare a pre-parole report that is filed with a Parole Board panel. N.J.S.A. 30:4-123.54(a). Then a "designated hearing officer" reviews that report, along with other supporting documentation, and determines "whether there is a basis for denial of parole" or whether "additional information providing a basis for denial of

11

parole would be developed or produced at a hearing." N.J.S.A. 30:4-123.55(a).

If the hearing officer finds no basis to deny parole and no need to develop more information at a hearing, he or she then submits a written recommendation "to the assigned member of the [B]oard panel that parole release be granted." Ibid. If the Board panel member concurs, parole is certified. N.J.S.A. 30:4-123.55(b).

But if the hearing officer "determines that there is a basis for denial of parole, or that a hearing is otherwise necessary," the case must be referred to a panel of the Board for a hearing. N.J.S.A. 30:4-123.55(c). The hearing is informal. Ibid. The Board panel can receive "as evidence any relevant and reliable documents or videotaped or in person testimony, including that of the victim of the crime or the members of the family of a murder victim if the victim or a family member so desires." Ibid. After the hearing, which also can be ordered if a panel member disagrees with the hearing officer's recommendation, see N.J.A.C. 10A:71-3.16(d), the Board panel can either "(1) certify the parole release of the inmate" or "(2) deny parole and file . . . a statement setting forth the decision," N.J.S.A. 30:4-123.55(d).

If the Board panel denies parole, the inmate may appeal in writing that denial decision to the full Parole Board. N.J.S.A.

30:4-123.58(a); N.J.A.C. 10A:71-4.2(a). Under that procedure, in contrast to the process when the panel recommends parole of a convicted murderer, an in-person review of the inmate by the full Board is not part of the structure of this review. Cf. N.J.A.C. 10A:71-3.19(c) (setting procedure to ensure murder inmate's presence at full Board review when two-member panel recommends parole of murder inmate under N.J.A.C. 10A:71-3.18(c)). In the review of a denial of parole, the full fifteen-member Board, minus the Board panel members that participated in the hearing, decides the appeal. N.J.S.A. 30:4-123.58(a). The Parole Board may affirm, modify, or reverse the Board panel's decision, or it can remand for further findings. N.J.A.C. 10A:71-4.2(f).

Importantly, the Parole Act creates an alternative parole track for inmates convicted of murder. For inmates serving a term for murder and other serious offenses, a hearing officer cannot recommend parole; the individual hearing officer must refer the case to a Board panel for a hearing. N.J.A.C. 10A:71-3.15(b). In the case of an inmate convicted of murder, even after the hearing, the panel is without authority to certify parole; it can only recommend parole. N.J.A.C. 10A:71-3.18(c). When a Board panel recommends parole, referral to the full Board is automatic. Ibid. Parole cannot be certified "until a

13

majority of the full parole board, after conducting a hearing, concurs in that recommendation." N.J.S.A. 30:4-123.55(f).

That alternate track grew out of 1989 and 1993 amendments to the Parole Act. Reflecting those amendments, N.J.S.A. 30:4-123.55(f) currently provides:

> Notwithstanding the provision of any other law to the contrary, if an inmate incarcerated for murder is recommended for parole by the assigned board member or the appropriate board panel, parole shall not be certified until a majority of the full parole board, after conducting a hearing, concurs in that recommendation. The board shall notify the victim's family of that hearing and family members shall be afforded the opportunity to testify in person or to submit written or videotaped statements.

The first sentence of the subsection, addressing the parole process for murder inmates, was enacted in 1989, see L. 1989, c. 115, § 1, and the second sentence on victim rights came in 1993, see L. 1993, c. 222, § 1.

In a statement issued when it considered the 1989 amendment, the Senate Judiciary Committee detailed the parole process and the effect that the 1989 amendment would have:

> Under present procedures, whenever any inmate nears his parole eligibility date, a hearing officer is assigned to review that inmate's record. If the hearing officer determines that no basis for denial of parole exists, he recommends to the parole board member assigned to that case that the inmate be released. If the board member concurs in that recommendation, parole is certified.

14

> If the hearing officer does not recommend parole or if the assigned board member does not certify a parole recommendation, a parole hearing is held by the appropriate board panel. After that hearing, the board panel either certifies or denies parole.
>
> Under this bill, whenever an inmate incarcerated for murder is recommended for parole, parole shall not be certified until a majority of the full parole board, after conducting a hearing, concurs in that recommendation.
>
> [Senate Judiciary Committee, Statement to Assembly No. 2772 (1989).]

That amendment was signed into law in June 1989 by Governor Thomas H. Kean.

The Legislature amended the statute yet again in 1993 to address the hearing conducted by the full Board when considering the release of a convicted murderer, adding the following language: "The board shall notify the victim's family of that hearing and family members shall be afforded the opportunity to testify in person or to submit written statements." L. 1993, c. 222, § 1. The Sponsor's Statement accompanying the legislation explained:

> Under present law, the full Parole Board is required to hold a hearing prior to certifying the parole of an inmate incarcerated for murder. This bill would permit the family of the murder victim to testify in person or submit written documents at that hearing.
>
> [Sponsor's Statement to S. No. 1243 (1992).]

15

With that background to the parole process in mind, we turn to the matter before us.

IV.

In the performance of administrative law actions and determinations, process matters. An administrative agency exercises its delegated authority and applies its intended expertise pursuant to the Legislature's enabling act that frames the performance of the agency's assigned tasks. The prescribed process includes "the means by which the Legislature expects the agency to act." See 37 New Jersey Practice, Administrative Law and Practice § 1.6, at 10 (Steven L. Lefelt et al.) (2d ed. 2000). The parole scheme operates within that general construct.

The decision to grant or deny parole has been granted to a legislatively created administrative body comprised of persons having a combined background deemed suitable by the Legislature to make exceedingly difficult predictive pronouncements about an individual's likelihood to reoffend. See N.J.S.A. 30:4-123.47(a). The process created by the Legislature for that body to follow is one that reflects the trust reposed in the body of individuals selected to serve as the decision makers for an agency cast with responsibility and authority to make difficult predictive determinations. See Hawley, supra, 98 N.J. at 112 (stating that, under Parole Act of 1979, Parole Board is tasked

16

with serious responsibility of determining "whether an inmate satisfies the criteria for parole release"); Beckworth, supra, 62 N.J. at 359 (noting that Board is expected to draw from members' diverse backgrounds when making "highly predictive and individualized discretionary appraisals").

Here, the administrative process calls for stepped decision making. In this instance, we are called on to discern how that administrative process was intended to work, inclusive of judicial review, in the context of a sequence of events not faced before by this Court under the present statutory configuration.[2] Our task here, as in every matter involving statutory construction, is the same: "'to divine and effectuate the Legislature's intent.'" Perez v. Zagami, 218 N.J. 202, 209 (2014) (quoting State v. Buckley, 216 N.J. 249, 263 (2013)).

The best evidence of that intent is the plain language of the statute, which thus serves as the starting point for statutory review. Id. at 209-10. However, if there is ambiguity lurking in the statute's plain language such that its application in particular circumstances "is not clear" or "is susceptible to more than one plausible meaning," the Court may

---

[2] The Board represents that in the twenty-five years since the enactment of N.J.S.A. 30:4-123.55(f), in cases where appellate courts ordered the parole of a murder inmate, the full Parole Board had conducted a full hearing. That historical fact is not disputed.

17

look beyond the statutory text to extrinsic sources to aid in understanding the Legislature's will.  State v. Olivero, 221 N.J. 632, 639 (2015) (internal quotation marks omitted).

Our focus is drawn then, as it must be, to the legislative amendments that created the current provision codified as N.J.S.A. 30:4-123.55(f), which deserves repeating in full:

> Notwithstanding the provision of any other law to the contrary, if an inmate incarcerated for murder is recommended for parole by the assigned board member or the appropriate board panel, parole shall not be certified until a majority of the full parole board, after conducting a hearing, concurs in that recommendation.  The board shall notify the victim's family of that hearing and family members shall be afforded the opportunity to testify in person or to submit written or videotaped statements.

Although that subsection clearly and expressly prevented the parole of a convicted murderer by the sole action of a simple two-member panel of the full Board, as Acoli and amicus the ACLU-NJ have argued, we are hard pressed to view the legislative language as restrictively as they do in the setting of this appeal.  They maintain that a full hearing is required only when the two-member panel recommends parole to a convicted murderer.  However, that literal reading of the language misses the overall import of the consequences of the legislative outcome that the 1989 amendatory language sought to achieve, namely to ensure that no convicted murderer would be released

18

without having had a full Board hearing to consider the murder inmate's grant of parole.

Although not expressly stated in that manner in the 1989 amendatory language when the Legislature was reacting to a panel of the Board recommending parole without any full Board review of that result, that animating principle is implicit in the increased procedural hurdles that the Legislature saw fit to insert into the then-existing parole process for inmates incarcerated for murder. At the very least, the language is ambiguous in expressing the sense of this amendment and its operation in all settings involving the parole release of a convicted murderer, making resort to legislative history to resolve the question raised by the ambiguity appropriate.

Here the legislative history that is available does not support the constrained reading, advanced by Acoli and by the ACLU-NJ, of the 1989 amendatory language contained in the first sentence of subsection (f). Instead, the Board's proposed interpretation finds support from the general understanding of the amendment's import contained in contemporaneous legislative history. See, e.g., Office of the Governor, News Release (June 29, 1989) (explaining on Governor's signing of bill into law that new legislation "requires the full Parole Board to review parole recommendations for inmates convicted of first-degree

19

murder"); <u>Senate Judiciary Committee</u>, <u>Statement to Assembly No. 2772</u> (signaling same expectation).

Moreover, generally, when construing language of a statutory scheme, deference is given to the interpretation of statutory language by the agency charged with the expertise and responsibility to administer the scheme. See <u>US Bank, N.A. v. Hough</u>, 210 <u>N.J.</u> 187, 199 (2012) (explaining that when plain language leads to more than one reasonable interpretation, extrinsic evidence may be considered, and that such evidence includes agency's interpretation of statute it is tasked with administering). Here that agency -- the Board -- maintains that it operated under the expectation that, if ever the Board's affirmance of a two-member panel's decision to deny release to a convicted murderer were reversed on judicial review, the full Board would have the opportunity to conduct its final and full Parole Board hearing that is implicitly required by <u>N.J.S.A.</u> 30:4-123.55(f), including the opportunity to interview the inmate in that setting.

The Board points to the lack of that full review here and argues, persuasively, that its absence is significant and contrary to the legislative design for careful and thorough review at all administrative levels prior to parole release of murder inmates. The Parole Board maintains that there are differences between a review on the papers and a plenary

20

hearing. One reviews a denial by the two-member panel, and, in the other, the full Board is itself considering whether to approve the grant of parole to a convicted murderer. We accept that those hearings are different in nature and kind, the latter calling on the dynamic in-person interaction of the full Board's members with the convicted murderer to assess collectively the inmate's suitability for parole. In that exchange, the diverse backgrounds and expertise of the individual Board members may be utilized and inform the considered judgment of the decisional body.

It makes little administrative sense to expect the full Board to conduct the equivalent of a full Board review for release of a convicted murderer whenever a two-member panel withholds parole. To convert every such appeal to a full-blown review would waste Board personnel and fiscal resources. Rather, it is reasonable for the Board to focus its attention on the inmate's reasons for criticizing the two-member panel's record and decision and have that limited review be subject to judicial review before the Board is required to conduct a resource-intensive full hearing.

We recognize that the agency's implementing regulations did not specify such a step, as it had never before occurred (all prior judicial parole orders of murderers having come after the full Board had conducted a full review). However, the

regulatory scheme in its totality underscores the need for ensuring a murder inmate's appearance at a full Board examination prior to securing parole release, see N.J.A.C. 10A:71-3.19(c), and specifies the extensive actions that the Board and the Department of Corrections must take in order to satisfy that important step in the process. In light of the rarity of that circumstance, we do not place much weight on the failure for such an occurrence to be spelled out in the administrative regulations. The Board's interpretation of what the Legislature expected of it in the execution of its delegated predictive task is reasonable and thus entitled to deference by the courts. In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010) ("We will defer to an agency's interpretation of both a statute and implementing regulation, within the sphere of the agency's authority, unless the interpretation is 'plainly unreasonable.'" (quoting Reilly v. AAA Mid-Atl. Ins. Co. of N.J., 194 N.J. 474, 485 (2008))).

That supports showing patience, exercising judicial restraint, and allowing the administrative process to reach its conclusion. By virtue of our remand, we ensure that subsequent judicial review, if critical of the substance of that ultimate determination by the Parole Board under the applicable standard of review, does not impermissibly result in a judicial substitution of a decision reposed by the Legislature with the

22

Parole Board. The Appellate Division here declined to remand to the Parole Board for a full hearing, as was requested on reconsideration by the Parole Board. The panel, essentially, saw no point to that step, having itself evaluated Acoli's bases for asserting that he is ready for release and determining that there has been no convincing reason presented to date to require his further incarceration. That remedy basically substituted the appellate panel's judgment for that of the agency charged with the expertise to make such highly predictive, individualistic determinations -- the full Parole Board. We are reluctant to agree with the appellate panel that such a determination should have been made without having allowed the completion of all steps that the Legislature deemed necessary in the deliberation on paroling a convicted murderer.

Finally, we note that statutory construction abhors an interpretation that would render meaningless words within a statute. Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 587 (2013) (observing as "bedrock assumption" that Legislature does not include meaningless language). "[E]very effort should be made to avoid rendering any part of the statute superfluous." State in Interest of K.O., 217 N.J. 83, 91 (2014). In 1993, the Legislature pointedly added reference to the rights of victims, stating

23

> The board shall notify the victim's family of that hearing and family members shall be afforded the opportunity to testify in person or to submit written statements.
>
> [L. 1993, c. 222, § 1.]

That language supports the conclusion that, prior to a murder inmate's parole release, the Legislature expected that the full Board would conduct a hearing (1) with the inmate present for examination, not a paper review of the record below, and that (2) the victim or victims would receive notice of that hearing and be given the opportunity to address the Board and to witness the full Board's interaction with the incarcerated murderer prior to his or her approval for release. Under the truncated review that occurred here, and on which the Appellate Division based its order requiring the Board to set conditions for Acoli's release, that language would be substantially neutered, if not rendered meaningless. It is not equivalent to point to a victim's right to submit material to the two-member panel that would then be part of the paper-record review conducted by the full Board on a recommendation of parole denial.

In sum, the Appellate Division's remedy missed a step by not remanding to the full Board for a full hearing and assessment of Acoli's suitability for parole release. We express no view on what the outcome of that full assessment

24

should be.  Whatever it shall be, there will be a right of appeal to the Appellate Division.  If Acoli is denied parole, then that would be the appropriate time at which the Appellate Division might have occasion to consider whether the unusual remedy of judicially ordered parole of a convicted murderer might be in order.  However, that possibility must await completion of the parole process in its entirety.

V.

The remedy imposed by the Appellate Division is reversed, and the matter is remanded for further proceedings consistent with this opinion.[3]

JUSTICES PATTERSON and SOLOMON and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion.  JUSTICE ALBIN filed a separate, dissenting opinion.  CHIEF JUSTICE RABNER and JUSTICE FERNANDEZ-VINA did not participate.

---

[3] It is difficult to reconcile the charged nature of the dissent's language with the commonplace remedy of a remand to complete an administrative process, as ordered in this matter. To the extent that the dissent is so impassioned because it is Acoli whose case is remanded, we add only this.  It was the procedural setting of this case that gave rise to an issue of first impression.  Our resolution of that issue will govern the parole process for all inmates incarcerated for murder, not only Acoli.

25

SUNDIATA ACOLI (f/k/a CLARK
EDWARD SQUIRE),

    Petitioner-Respondent,

        v.

NEW JERSEY STATE PAROLE
BOARD,

    Respondent-Appellant.


    JUSTICE ALBIN, dissenting.

    Fifteen years ago, this Court stated that "[n]o matter how great the pressure, agencies of government cannot ignore the law in special cases." Trantino v. N.J. State Parole Bd., 166 N.J. 113, 197 (2001). The Court made that statement because the New Jersey Parole Board, in a controversial case, repeatedly refused to parole an inmate despite the governing statute that called for his release. See id. at 121, 189. The inmate, Thomas Trantino, had brazenly and brutally killed two police officers thirty-seven years earlier. See id. at 121-22. The Court knew that the public would "find it incomprehensible that the law requires parole release of an inmate who was responsible for the murder of two police officers." Id. at 196. It nevertheless ordered Trantino's release because, after almost four decades in prison, there was no longer a substantial likelihood that he

1

would commit another offense.  Id. at 190.  The Court emphasized that the "case [was] more about the rule of law than it [was] about Thomas Trantino," and that the law must apply "equally to all persons, the bad as well as the good."  Id. at 197-98 (quoting Catena v. Seidl, 68 N.J. 224, 228 (1975)).  The Court concluded with these words:  "If ever courts permit agencies of government to create exceptions to the rule of law, applying it for the many but exempting the disfavored, we will have irreparably damaged the foundation of our democracy."  Id. at 198.

The present case tests whether our Court is willing to keep faith with the guiding principles set forth in Trantino.

Sundiata Acoli, now seventy-nine years old, committed infamous crimes forty-two years ago -- the murder of one New Jersey State Trooper and the atrocious assault and battery of another.  He was sentenced to a term of life plus twenty-four to thirty-years imprisonment.  Based on the law in effect when he committed those abhorrent crimes, he has been eligible for parole.  The Parole Board denied Acoli parole in 1993, 2004, and 2011.  On the last occasion, as on earlier ones, the Parole Board maintained that there was a substantial likelihood that Acoli would commit another crime if released.

The Appellate Division reversed, finding no support in the record for the conclusion that Acoli posed a threat if paroled.

2

The Appellate Division determined that the Board's denial of parole was therefore arbitrary and capricious and ordered the Board to release Acoli after setting appropriate conditions.

In ordering Acoli's release, the appellate panel simply followed the plain words of the governing parole statute and gave this notorious inmate the protection of the law. The courageous appellate panel clearly recognized that its decision would not be popular and might be misunderstood, but was willing to suffer the public's opprobrium because the law commanded the result.

The Board does not challenge the Appellate Division's finding that the denial of parole lacked evidential support. Instead, the Board argues without any statutory support that the Appellate Division must (1) remand to the Board to hear directly from Acoli, although the Board evidently had no desire to hear from him when it last convened, and (2) allow the victim's family members to be heard, although they were given the opportunity to register their opinions through written or videotaped statements.

In accepting the Board's argument and overturning the Appellate Division, the majority ignores a plainly written statute and our jurisprudence governing appeals from a final decision of a state agency. See N.J.S.A. 30:4-123.55; In re Appeal of Certain Sections of Unif. Admin. Procedure Rules, 90

3

N.J. 85, 96 (1982) ("The final decision constitutes the ultimate regulatory result."). The majority's strained and unreasonable interpretation of our law will keep Acoli in prison for more hearings and more appeals -- without in any way altering the Appellate Division's unchallenged legal conclusion that Acoli poses no danger to the public. The now forty-two-year record in this case will not meaningfully change on remand; nor is it reasonable to expect that the Board's decision will change. But the majority decrees that these pointless steps be taken.

Acoli committed the most heinous crime: the murder of a law enforcement officer -- a crime, which, if committed today, would result in a life sentence without parole eligibility. N.J.S.A. 2C:11-3(b)(2). But even the most despised inmate is entitled to the protection and enforcement of the law. That was the lesson in Trantino. That is a lesson, sadly, forgotten today. Because Acoli has not been given the benefit of the statute as written, I respectfully dissent.

I.

The Parole Act, N.J.S.A. 30:4-123.45 to -123.69, provides two pathways in the parole process for inmates sentenced to prison for murder. Both paths begin the same way. A pre-parole report, which includes any statements submitted by the victim's relatives, is forwarded to a panel of the Parole Board. N.J.S.A. 30:4-123.54(a), (b)(2); N.J.A.C. 10A:71-3.7(c)-(d). A

4

hearing officer then reviews the pre-parole report and any related material and refers the case to a Board panel.  N.J.A.C. 10A:71-3.15(a)(1), (b).  The Board panel must notify the victim's relatives of their right to testify or submit written or videotaped statements at the hearing.  N.J.S.A. 30:4-123.54(b)(2).  Next, a Board panel reviews the pre-parole report and conducts a hearing.  N.J.S.A. 30:4-123.55(c); N.J.A.C. 10A:71-3.16(a).  At the hearing, the Board panel "receive[s] as evidence any relevant and reliable documents or videotaped or in person testimony, including that of the victim of the crime or the members of the family of a murder victim if the victim or a family member so desires."  Ibid.

Pathway one is when the Board panel denies parole.  In that circumstance, the inmate may appeal to the full Parole Board for a review of the panel decision.  N.J.S.A. 30:4-123.58(a); N.J.A.C. 10A:71-4.1(a).  The inmate and victim's relatives have no statutory right to appear in person before the full Parole Board, although they are provided the opportunity to be heard before the Board panel.  See N.J.S.A. 30:4-123.55(c).  The full Board, however, has the inherent authority to permit the inmate and the victim's relatives to make statements or give testimony before rendering a decision.  If the full Parole Board denies parole in a final agency determination, the inmate has the right of appeal.  See Trantino, supra, 166 N.J. at 173.

The Appellate Division is authorized to correct arbitrary decisions of the Parole Board and, when necessary, to order the release of a prisoner held in violation of the law.  Ibid.  That power is the essence of judicial review.  It ensures that the rule of law is not sacrificed to the caprice of government actors rendering decisions that cannot be justified by the record or governing statutes.  Ibid.  Under the law applicable to Acoli, parole could be denied only if a preponderance of the evidence established a "substantial likelihood" the individual would commit a crime if released.  See N.J.S.A. 30:4-123.53(a) (1979), amended by N.J.S.A. 30:4-123.53(a) (1997) and N.J.S.A. 30:4-123.56(c) (1979), amended by N.J.S.A. 30:4-123.56(c) (1997).

Pathway two is when a Board panel recommends that an inmate incarcerated for murder be released on parole.  In that circumstance, the case is referred automatically to the full Parole Board.  N.J.S.A. 30:4-123.55(f); N.J.A.C. 10A:71-3.18(c).  When the Board panel recommends release, N.J.S.A. 30:4-123.55(f) directs that "parole shall not be certified until a majority of the full parole board, after conducting a hearing, concurs in that recommendation."  That statute also provides that the victim's family shall be notified of the hearing and "be afforded the opportunity to testify in person or to submit written or videotaped statements."  Ibid.

6

Subparagraph (f) was enacted as an amendment to N.J.S.A. 30:4-123.55 to prevent a two-member Board panel from paroling an inmate incarcerated for murder without review by the full Parole Board. See Senate Judiciary Committee, Statement to Assembly No. 2772 (Feb. 23, 1989). In enacting subparagraph (f) (pathway two), the Legislature was aware that a final determination by the Parole Board under pathway one was subject to judicial review and could be reversed if arbitrary and capricious, and that the court was empowered to order parole. See, e.g., N.J. State Parole Bd. v. Cestari, 224 N.J. Super. 534, 551 (App. Div.), certif. denied, 111 N.J. 649 (1988) (ordering parole in 1988); Mallamaci v. Dietz, 146 N.J. Super. 15, 22-23 (App. Div. 1976) (ordering parole in 1976). In other words, subparagraph (f) has no bearing on pathway one. Nothing in the language of subparagraph (f) or the legislative history suggests that the Legislature intended to address anything other than the circumstance of a board panel's decision to recommend release of a convicted murderer.

II.

A.

The law pertaining to pathway one governs the outcome of this case.

In 2010, for the third time, Acoli was eligible for parole. A "pre-parole report" was prepared, see N.J.S.A. 30:4-123.54(a);

7

N.J.A.C. 10A:71-3.7(c)-(f); the victim's family members were advised of their right "to provide a written or videotaped statement" or testify before the Parole Board panel, see N.J.S.A. 30:4-123.54(b)(2); and the Board panel met with Acoli and reviewed his file along with the victim-impact statements, see N.J.S.A. 30:4-123.55(c). The two-member Board Panel denied parole. With the addition of a third member, the Board Panel imposed a future parole eligibility term of ten years, making Acoli eligible for parole at the age of eighty-three.

Acoli appealed to the full Parole Board in accordance with N.J.S.A. 30:4-123.58(a) and N.J.A.C. 10A:71-4.1(a). Although Acoli had no right to appear before the Parole Board to present his case, the Board had the authority to conduct a personal interview of him. Acoli did not receive an invitation to appear before the Board. The full Parole Board reviewed Acoli's complete file covering the entirety of Acoli's incarceration. Acoli's hearing on the written record, before the full Board, conformed with the applicable statutes and regulations.

In a "Notice of Final Agency Decision," dated February 23, 2011, the full Parole Board denied Acoli parole, finding a substantial likelihood that Acoli, if released, would commit another offense. The Board based its decision on (1) Acoli's conviction of the murder of Trooper Foerster in 1973 and earlier minor charges, for which he received probationary sentences; (2)

8

his purported lack of insight into his criminal behavior committed thirty-seven years earlier; (3) his account of events about the Trooper Foerster murder, which the Board found "not credible"; and (4) his refusal or inability to accept the State's version of what occurred. The Board found that Acoli's "answers made it difficult to understand how and why his thinking has transitioned from violent to non-violent thinking" in the years since his incarceration in 1973. Acoli had been a member of the Black Panther party in the 1960's and 1970's but, while in prison, renounced the use of violence as a means of bringing about societal change. Last, the Board attributed to Acoli "impulsive and questionable judgment" because he personally called the psychologist to ask her when his psychological evaluation would be conducted for his pre-parole report.

B.

The Appellate Division concluded that a "thorough scrutiny of the record" did not "support the Board's stated reasons for denial of parole, namely that if released Acoli would be likely to commit another crime." This conclusion is not disputed. The appellate panel made the following observations: (1) Acoli has not committed a single disciplinary infraction since 1996, and accumulated only minor infractions since 1979; (2) his institutional progress report indicated that he "'has displayed

9

a positive rapport with both staff and inmates'"; (3) Acoli "completed at least 100 different programs for self-improvement as well as vocational training"; (4) Acoli was a prisoner representative for the correctional facility's social resource organization, and as a result of "his positive institutional record, he became a member of the Honors Unit program"; and (5) in 2008, prison staff reported that Acoli had "demonstrated adequate coping skills . . . and ability to establish positive interaction with others," and that he was expected "to be able to transition to the community if paroled."

The appellate panel also referenced the pre-parole mental health evaluation conducted by Lois D. Goorwitz, Ph.D. Dr. Goorwitz noted that Acoli "'expressed regret and remorse about his involvement in the death of the state trooper'" and "'appeared to be answering honestly.'" Dr. Goorwitz also found Acoli "'to be very cooperative, self[-]reflective, thoughtful, and non[-]defensive in his responses to the questions posed to him.'" (alteration in original). She concluded that "'there were "NO psychological contraindications to granting parole."'" The panel expressed that it was "appalled by Acoli's senseless crimes" but that the Parole Board's decision was wholly contradicted by the record and that "Acoli has paid the penalty under the laws of this State for his crimes." Because the Appellate Division determined that "[t]he record simply does not

10

support further denial of parole," it directed the Parole Board to take the appropriate steps leading to Acoli's release.

C.

The Appellate Division also denied the Parole Board's motion for reconsideration. The appellate panel rejected the Board's argument that its final parole decision was not, in fact, final because Acoli was not granted "a full evidentiary hearing" under N.J.S.A. 30:4-123.55(f). The appellate panel noted that the plain and unambiguous language of N.J.S.A. 30:4-123.55(f) requires a full evidentiary hearing by the Parole Board only when a Board panel recommends that a murder inmate be paroled. The Appellate Division pointed out that N.J.S.A. 30:4-123.55(f) does not apply to inmates, such as Acoli, who are denied parole by a Board panel. The statutes applicable to cases in which the Board panel denies parole, N.J.S.A. 30:4-123.55(c) and -123.58, do not mandate that the full Parole Board conduct an evidentiary hearing. The appellate panel indicated that, "in a nine-page 'Notice of Final Agency Decision,' the Board methodically reviewed the evidence and determined that . . . there was a substantial likelihood that [Acoli] would commit a crime if released," and unanimously elected to deny Acoli parole. The appellate panel stated that the Parole Board's assertion that the Appellate Division's reversal of the full Board's final decision was the equivalent of a Parole Board

11

panel recommending parole, thus triggering a remand for an evidentiary hearing, was "patently incorrect."

                                III.

The Appellate Division's straightforward application of the law cannot be faulted.  A majority of this Court has rewritten the plain, unambiguous language of the statute to reach an outcome that it believes the Legislature would find reasonable. That is a new canon of statutory interpretation.  Nothing in the statutory text supports the majority's decision.  Moreover, as suggested by the Appellate Division, the majority's result upends the meaning of a final administrative determination.

Presumably, when the full Parole Board denies parole to a murder inmate, the Board has completed a comprehensive review of the record, including the inmate's interview, the victim-impact statements, the inmate's history of institutional adjustment and progress, psychological reports, and all other relevant material.  See N.J.S.A. 30:4-123.58(a); N.J.A.C. 10A:71-4.1(a). This is not and should not be a pro forma undertaking.

Under the majority's new formulation, after the full Parole Board denies parole to a murder convict in a final agency determination, following an earlier denial by a Board panel, the Appellate Division can render only an advisory decision -- even when the record utterly fails to show a substantial likelihood that the inmate will commit another offense if released on

                                 12

parole.  That approach ignores our existing jurisprudence.  The majority requires that the Appellate Division must remand to the full Board for an evidentiary hearing.  If the Parole Board conducted a thorough review the first time, however, we cannot expect the Parole Board will change the view it expressed in a nine-page, single-spaced decision.  Instead, we have the makings of a show hearing.  Acoli will be given the opportunity to appear before the full Parole Board to repeat what he has said earlier and to be called lacking in credibility based on his in-person presentation.  The victim's family also has the opportunity to repeat what the Parole Board has read or reviewed through videotaped statements.  Then, a parole denial will follow, a new round of appeals, and the Appellate Division can revisit the matter when Acoli is an octogenarian.

The tortured interpretation of the statutory scheme creates a merry-go-round that will extend the incarceration of Acoli -- but for no rational or just purpose.  In Trantino, this Court committed the judiciary to the task of ensuring that administrative agencies not thwart the law in unpopular cases. Trantino, supra, 166 N.J. at 197.  In that case, we held that the law cannot bend to the strong winds of public opinion. Perhaps few will shed a tear that Acoli will spend more years in prison -- without any legal justification -- for the murder of a police officer.  But this case is about more than one

13

individual.  It is about the integrity of our justice system. The rule of law must apply even to the most disfavored member of society.

The precepts articulated in <u>Trantino</u> are as relevant today as they were fifteen years ago.  By reversing the Appellate Division, the majority has forsaken those precepts.  I therefore respectfully dissent.

SUPREME COURT OF NEW JERSEY

NO.    A-52               SEPTEMBER TERM 2014

ON CERTIFICATION FROM       Appellate Division, Superior Court


SUNDIATA ACOLI (f/k/a CLARK EDWARD
SQUIRE),

     Petitioner-Respondent,

             v.

NEW JERSEY STATE PAROLE BOARD,

     Respondent-Appellant.


DECIDED        February 23, 2016

                                        PRESIDING

OPINION BY     Justice LaVecchia

CONCURRING/DISSENTING OPINION BY

DISSENTING OPINION BY     Justice Albin


| CHECKLIST | REVERSE AND REMAND | DISSENT |
|---|---|---|
| CHIEF JUSTICE RABNER | ----------------- | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | | X |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | ----------------- | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 4 | 1 |